Our next case is 413-0115, Fulk v. Brink. For the appellant is George Petrilli. You are here, sir. For the appellee is Stanley New. Is that pronounced correctly, sir? Yes. Mr. Petrilli, you may proceed. May it please the court. Counsel. We're here today on an issue of summary judgment in a couple different parts. The initial part was dealt with in a motion to reconsider with the trial court, where the plaintiff had filed a partial motion for summary judgment. I believe in those issues what had come out of that was a partial granting of that motion reconsidered by the trial court, where the trial court recognized that damages could be shown or presumed, and there was an issue of material fact that was still to be determined for one specific project. The record, I believe, shows, and why we're here today, and the question being that the court erred, is that there were a number of questions of material fact for all other projects that were still pending that had been identified by the plaintiff at the time. It was all part of the record at the time, and the error that we're asserting is that the trial court abused its discretion in applying the correct application of the law. There's no discretion in the summary judgment motion. As far as the motion for reconsideration, I believe that was the error in discretion as to what we had asserted, in that it should have been granted fully and not partially for one project so that it could come back on motion. What we were asking for, I believe, in that motion to reconsider, was to grant fully the partial motion for summary judgment concerning all projects, not just one. I believe later on that the motion for summary judgment of the defendants was granted concerning that one project. I believe the first part we were asking was that the plaintiff's motion for summary judgment should have been allowed. The facts that I believe were still uncontested, that there were grounds to preclude summary judgment for the defendant were similar to the grounds that should have been granted to allow summary judgment in that partial matter of liability for the plaintiff, where in the deposition of the defendant, the defendant admitted that the work done by the plaintiff was the type of work that was qualified, that he went to those job sites that were qualified as prevailing wage job sites, public works jobs. Also, the defendant admitted that he was never paid, according to the statute, that he was only paid, I believe, $15.50 an hour. The statute was significantly higher, along with other amounts for health and welfare. It was never considered and he was never given that. I think that admission alone... Are you referring to his deposition testimony? Yes. Do you think that's subject to various interpretation? I mean, he didn't really come out and say he wasn't paid prevailing wage. Can you recite that for us, counsel? I mean, what was his testimony, the question and then his answer? Okay, I believe in the context was that we were asking about what the job duties that the plaintiff had performed. And those job duties were actually, I believe what we asked for was the exact text of the statute, as far as deliveries were concerned. And so the question was, so he would carry construction equipment, supplies, tools, fuel, whatever it was to construct the plane,  construction sites, is that correct? Yes. And that is the exact text from the statute, I believe. The next question then going on is, and many of those construction sites were what we call private work and many were public work. Is that correct? The answer is that's correct. That meaning that the public works were the prevailing wage ones, the private ones were obviously other jobs that the defendant was on. And during that period of time, he would haul, I take it from what you say, he would haul these things, both public and private jobs. That's correct. To me, that was the admission that he did perform that work that was qualified under the statute. He did it on both public and private jobs. Obviously, the public jobs were the only ones that were a question here that would qualify for that payment. Further, he states, okay, well, is that right, 150? And I believe that was truncated and probably should have been elaborated a little bit more, but I believe that 1550 indicates what his payment, his salary was, give or take a little bit of raise here or there throughout the years. And that was never, he was never paid prevailing wage. He was never considered to be paid prevailing wage. He was always paid the exact amount per hour. Seeing that as the admission that he never was considered to be part of that, within that statute, the work was never considered, although right before that, he admits that he did perform that exact work based on the text of the statute, by saying, yes, he did those deliveries of that description of material and supplies, and that he was never paid prevailing wage. Prevailing wage being probably around $20 to $30 an hour for that type of work, plus another $14 or $15 an hour for health and welfare, whether he got insurance or benefits. So that, I understand that there may be some interpretation as far as what he may have believed, what qualified as it, but I believe the language is very clear as what that type of work was, and that he did perform the work, and that he was never paid that amount at all. And there's no record and no allegation that he was ever paid, or that he ended up on any certified payroll as the statute would require if he did that work. Thank you. So I believe that was the material issue of fact, I believe for our purposes, was always involved about damages, about whether he could calculate damages. I think the admission was clear about that he did perform the work. It was always more of an issue of, well, can he prove that he was, when and where he was there, for what period of time, and how do we calculate that? For our purposes, for the plaintiff, that is, the motion reconsider, which is based on that motion for partial summary judgment, the allegation was that he, for the whole time, period of time, through his deposition, admitted that he went to every single public works project that the defendant did. So it was in that point that we alleged damages appropriately, and that he actually did all the work so it could be calculated. Even if he couldn't be persuasive to the binder of fact, it's still a material issue of fact. It should preclude any summary judgment. But also on the plaintiff's portion, it should show that he alleged everything. It was never controverted by any evidence or by any statement or affidavit that this was never done. It was just a matter of, well, you can't prove it, so you don't get to recover. I don't believe that's proper in that even nominal damages are an essence of damages that were alleged. Potentially, if you read the deposition the way the plaintiff does, show that there is an admission there, and what is lacking is just how do we calculate that. Again, I believe that's a matter of fact, not a matter of law for the judge to abuse his discretion in not granting all of that. Now, as far as the evidence that was presented, as we went through, I believe, another error that was on the trial court's part in that motion to reconsider was that the judge acknowledged that the plaintiff, through the deposition, checkmarked a list of projects that were considered public works projects, as him knowing that he was at that project, whether he could say definitively dates and times he knew, based on the description of the name of the project that he had been there. He went through that in the deposition, checkmarked each one, or almost every single one of them. In the opinion of the trial court, when he partially granted the motion to reconsider, the judge said that he didn't find that persuasive. Again, I think that's a matter of fact for the fact finder to determine whether the plaintiff's recollection or memory, what the descriptions of those places might be, what type of equipment he delivered, were, again, a matter of fact. As far as alleging his damage and it not being controverted in any way, I believe him showing that, going through the list and identifying all the ones that he knows that he performed that work on should overcome any sort of prejudice to the defendant and actually grant that partial summary judgment for liability. Also, the evidence that the judge used was that he later then made a comment that, well, I know I was on this one particular job, the Cedar Creek job, through the prodding of counsel in the deposition. I don't believe that to be taken as that's the only one that he could ever remember anything of or could ever prove damages, because, again, I think that's a matter of fact to be determined later on. And the fact that he could say that, yes, I was there, yes, I was damaged, should at least allow for nominal damages to move forward to trial. And it would just be a matter of how he could prove it. Are nominal damages adequate under the act to proceed? I believe so, yes. That being said, I think one of the cases cited was the Kirkpatrick case, where nominal damages were shown to be proper in a statute of fraud claim, I believe. And a very similar type of claim here, I believe, is this lack of payment for work done. I think that nominal damages show that there is some liability there, and it's just a matter of how much can be proven based on what the evidence is, what the recollection is, and what the fact finder finds to be persuasive. So the second portion then kind of blends into the first one, so I'll try to seamlessly do it here as best I can. The fact that the trial court then only allowed for the one project, again, I believe, is under the same abuse of discretion for that motion to reconsider, because he did, the plaintiff, that is, indicate that he knew of more than one project through the checkmarks. And whether that's persuasive or not is, again, a matter of fact, not a matter of law for the judge to determine whether he found that persuasive or not. And that, again, should be, to me, is evidence that it should overcome any burden for the plaintiff as far as summary judgment. It should have been granted as far as liability for the partial summary judgment. Now, when we move into the defendant's motion for summary judgment, then as we proceeded on to that one particular project, there were several arguments that were made at trial that we are now bringing for question of error. One of them being the granting of summary judgment for that. The one project, the Cedar Creek project in particular, was determined by the circuit court to be what's called a federal aid project or a federally funded project. The language of the statute requires that in Illinois, as far as the Illinois Preventing Wage Act, the Secretary of Labor of the U.S. Department of Labor makes a wage determination. I don't think there was any statute interpretation. We even looked back at floor arguments and debates to try to find out what the purpose of that was, what the intent was. I don't believe either party was able to find anything like that. And it's just a matter of speculation now. And I believe even the evidence that we show when we try to interpret what does that mean, a wage determination, it was just a matter of personal opinion by whoever the witness brought on deposition, the labor official, the person at the U.S. Department of Labor. Neither of them were qualified or able to make a real determination of what does that mean, how does this preclude the application of the Preventing Wage Act. When we looked in at the analysis of that, it then brings up, I believe, what's a complex question, is that the application of the Davis-Bacon Act, similar to the Preventing Wage Act, the federal law, would come into place any time that the federal government had more than $2,000 based on the text of the statute. So if you would look at the result of that, if the state of Illinois was researching a road or building a bridge for $10 million or $50 million and the federal government supplied $10,000 of funds to hire somebody, then that would mean that all the provisions of the Preventing Wage Act would then not apply. And that's the strict application of those two laws. So to me, the intent of the Preventing Wage Act and the Davis-Bacon Act are to give a higher standard to workers based on the disparity of the balance of power of employers and employees. Now to preclude the application of a Preventing Wage Act where it's a fully owned state project and there's just a little bit of federal funding would be an absurd result in the end, because that means that all Illinois citizens, workers, Illinois taxpayer dollars do not go with the same protections that were intended by the Act. So that was where the question of whether there's a conflicts question of the two laws came into play. Again, another evidentiary aspect that I think backs up that theory is that the U.S. Department of Labor Davis-Bacon Act handbook that was given out to people that came from administrative law basically stated whenever there's a conflict, the employee sees the benefit of the higher two standards. So almost both of these laws would work in conjunction, not against each other, similar to other minimum wage laws would. So if there was a conflict of a federal or state law, the employee would always see the higher benefit. If you were to apply the interpretation of the defendant, that would never happen any time the federal government has more than $2,000 involved in any project at all, just based on whether the Davis-Bacon Act applies. So if you look at the conflicts argument of the issue, we believe that what that says is that the federal government basically has the ability to protect the workers the way that they did with the Davis-Bacon Act. Because of that, the state law should not be precluded just based on the federal government trying to protect a broader base of citizens throughout the country, because Illinois has a higher standard. Now the language, I understand and recognize that the way that it seems to be said is that well, when it's a federal government project, the state law does not apply, which would make sense in our interpretation that if the United States Army was going to build a barracks in Illinois, they wouldn't need to necessarily apply all of Illinois state law, the Preventing Wage Act, and bring in the Illinois Department of Labor to regulate that and everything that would go in hand with the conflicts of those two things. These projects all in hand being essentially state projects with some additional federal funding involved should to us mean that the Preventing Wage Act would still apply. The workers still see the benefit of all of that. And because of that, that interpretation means that the Cedar Creek Project isn't a fully funded federal project where the Preventing Wage Act did not apply based on that statute. And that interpretation, again, we couldn't find in any other court case or any other statute exactly what that meant. We believe that was in there just to avoid any conflict with the federal government whenever they would build projects. Again, this language was inserted, I believe, in this past back in the 1930s or 40s. I believe it's a more antiquated language. When you look at the application of it today, it really doesn't make sense and it goes against the intent of the act to apply it with the defendant's interpretation where the state can't do anything even if they have tens of millions of dollars in a project. They can't enforce their own laws. They can't use their own U.S. Department of Labor to protect their workers. They have to rely on the U.S. government to apply a lower standard, which is just impractical and improbable that they would do that on all these state projects. So the interpretation of that, I think, is key as far as trying to determine I believe that will take it. Thank you, counsel. Mr. Newt. If I may please the court, counsel. Counsel. I'd like the justices to first understand what the facts truly are in this case. Plaintiff was employed by Thompson, Inc., which is a trucking company, from March 04 through sometime in February of 09. Plaintiff admitted in his deposition he would transport materials to both private and public jobs and he also worked as an over-the-road truck driver. At his deposition, the plaintiff admitted he was unable to identify any jobs for which he was claiming prevailing wages. Plaintiff's attorneys appended to the second amended complaint, which was Exhibit A, a list of jobs. The plaintiff testified he did not prepare that list, he had no independent knowledge of who prepared the list, and he said clearly that he did not see that list before his deposition. Then plaintiff's counsel hands the plaintiff the list again and says, would you check off all the jobs that you worked at? Checked off all the jobs, or virtually all of them. The trial court, Judge Ortholf, found that so implausible and unbelievable that he said that, or concluded that, there is no reasonable man who could agree that he could identify any jobs. The plaintiff also testified he worked in a shop, which is clearly not prevailing wage work, and he drove to at least 16 states. He hauled materials for others. Now, the person who prepared this is Shaw, a business agent, and Mr. Shaw in his deposition says he prepared this listing of jobs by going to websites and Freedom of Information requests. So even Mr. Shaw didn't know where the plaintiff had worked. The counsel were referred to a motion to reconsider. The court first granted summary judgment as to all projects. On the motion to reconsider, the trial court found that there was one job mentioned, which is the Cedar Creek job. It was mentioned by the plaintiff in his deposition, and the trial court went through them in the second hearing on the summary judgment and concluded that the Cedar Creek project was a federal-aid project, which is not covered by the prevailing wage act. I'd like to go through for a moment what the trial court looked at to come up with that conclusion. First of all, the plaintiff apparently asserts that the Davis-Bacon Act and the prevailing wage act both apply, and the plaintiff is entitled to the higher of the two wages. That argument applies in the face of what the statute says. Section 11 of the prevailing wage act clearly states that it is not applicable to federal construction projects which require prevailing wage determination by the U.S. Department of Labor. The plaintiff concedes in his brief at page 23, when reviewing the same language which I spoke of, that the language appears to be concise and unambiguous. However, the plain application and the plain meaning would harm the plaintiff and others. What the plaintiff is saying, we don't like the result of reading of the statute. Statute is clear and unambiguous. The trial court looked at the affidavits of several persons, including Ronald L. Brink, who is the president of the defendant. The trial court looked at two things, a state contract and a federal aid contract, which is the Cedar Creek project. The federal aid, I'm sorry, the state contract at check sheet 5, and that's in the record at 307, it says that state contract provisions apply. At the record at 320, it says the prevailing wage act applies. At 321, it gives the state prevailing wage termination. Then if you compare the same portions of a contract to the federal aid contract, we find that there's a section that says additional federal requirements for federal aid contracts. It went on to look at, the court went on to look at the same check sheets, which clearly state that the state contract law does not apply. It went on, on the section K, says that it's a federal aid contract and the Illinois law is not applicable. It went on to say, the court looked at, disputes are to be covered by the U.S. Department of Labor regulations. But most important, at the record at 358, it says, under a section called payment of predetermined minimum wage, it says these rights apply by determinations by the U.S. Secretary of Labor and the wage termination which is attached. The wage termination is in the record at 397, at 407, and it is different than the wage termination in the state contract. The court properly concluded, the trial court properly concluded, that the Cedar Trail project was a federal aid project and it was excluded from the application of the state law. Mr. Newt, do you think nominal damages are available under the bailing wage act? I do not believe so. I could not find a case that they were, but I believe the cases that are cited by the plaintiff were tort type cases and I could not find a similar provision or similar case which would allow nominal damages in the case such as this. I would like to call the court's attention to one other thing. There is a case that this court decided some years ago called Sparks and Wewolf and what that case did is it interpreted section 3 of the prevailing wage act and what we did in the Sparks and Wewolf case is we had a general contractor who contracted with a quarry to buy a stone. The Riker Trucking then was hired by the stone company to carry the stone to the job and this court concluded that the Riker Trucking was a mirrored supplier and recognized the dichotomy of section 3 of the act. That dichotomy is that if the general contractor Sparks had done the delivery itself or with a subcontractor, it's covered under the prevailing wage act. However, with that dichotomy that Riker was a mirrored supplier, the prevailing wage act did not apply. Thompson is exactly in the same shoes as was Riker Trucking and the Sparks and Wewolf company. It was nothing more than a transporter and a supplier of materials. And that concludes the argument. Thank you, counsel. Mr. Petrilli, any rebuttal, sir? I do have a short one. Okay. There was a few things I neglected to address that brought to light here a little bit. One, I think the employment of the plaintiff was probably something that should have been discussed. He was employed by Thompson Trucking, which was a separate independent company from R.L. Brink, who was the general contractor for these jobs. The case Sparks v. Wewolf I don't think is really poignant at all and is actually kind of preposterous to try to apply because in that case the trucking company was actually hired by a supplier of materials, which is what the exemption states in the text of the statute. But in this case, Thompson Trucking was delivering the materials of the general contractor. It was their own construction equipment, heavy operating equipment, and other supplies from their own shop. It wasn't hired by a third-party supplier of an aggregate or any other kinds of manufactured materials. I mean, in that case, understandably, the interpretation is on point. But for this, it's not applicable at all because there's no allegation that what the plaintiff was delivering for one of the defendants, Thompson, to R.L. Brink was any other kind of third-party supplier. It was R.L. Brink Inc.'s equipment. So to see that there may be an exemption in there I think is far off point because the facts don't align with that at all. There was a separate case in there, which I'll strike because it wasn't brought. Now, as far as the list that wasn't prepared by the plaintiff, I think the plaintiff at all times, the list of construction projects that he said that he'd worked on, those public works projects, the list was prepared by his recollection that he worked on every job. If he was there, he went to that job. It was his duty to go to every job and deliver these types of things. So I think by his indication of going through and checkmarking all of them would show that he had a recollection that he was at that project. And the fact that he didn't check all of them would show that it's not preposterous or absurd or unreasonable that he was remembering these because he didn't go through and just circle everything. He obviously left out not all of them, not a substantial amount, but a number of the ones that he didn't recognize or didn't realize or remember that he was on. So I think that shows that he did have a recollection of damages. He could show those damages. To what amount, we don't quite know. And then when we talk about the interpretation of the statutes, meaning that we don't like the intent or we don't like the result of how the application of that language would result. I don't think it's a matter of the plaintiff doesn't like the result. I think it's the language with the interpretation of the defendant is actually against the intent of the Prevailing Wage Act. When it's enumerated at the top, the purpose is to protect the workers and to offset the balance of power of employers and employees and to take their interpretation that whenever, essentially whenever the Davis-Bacon Act comes into play, whenever there's $2,000 or more of federal money into a project, then it completely precludes all the protections of this act, the purpose of this act, the extensiveness of it, all the amendments that have been going on over the last 30 or 40 years of that were all done in order to protect workers. And the fact that this small bit of language which was inserted for what purpose we're not quite sure, but our interpretation would be that well, you still have to go with the intent of the act. And the intent of the act is to protect the worker, not to preclude prevailing wage just because the federal government has some involvement. Finally, I think there's a public policy connotation where in the deposition, the plaintiff had identified that he had made logs of all the jobs he went to, days, times, at the behest of the defendant. Now the defendant is saying we don't have those logs that you turned in to us so you can't collect damages, I think would just encourage employers to do whatever they can to make sure that their own employees can't prove damages later on down the road, which would mean not keep records, destroy records. In this instance, the plaintiff said he made those logs, he did all of that stuff at the behest of the defendant when they were requested. Those records are nowhere to be determined. So he can't prove damages anymore because the records that were in the hands of the defendant when he left employment are now missing. I think to say that there is no damage or nominal damage is not sufficient would preclude any plaintiff's legitimate claims against employers from coming forward. So just as a matter of public policy, I think nominal damages should be accepted just to be able to try to prove further on down the road with your own recollections and not just necessarily paperwork. So thank you. Thank you, counsel. We'll take this matter into advisement. Be in recess until tomorrow.